Good morning, Your Honor. I mean, it's important. I represent the petitioner in this case. This is an immigration case where the police have discovered a native and citizen of the United States. This is seeking review of the Board of Immigration Appeals' final order of removal. I question the guy's applications for asylum and withholding approval on the basis of an adverse credibility determination. Am I right in thinking that the complaint seeking is torture? It's no longer involved in this case. That's correct, Your Honor. Prior to seeking review in this court, the petitioner exhausted all of his administrative remedies available as of right, and adequately presented all issues to the agency. Well, let me ask you about that. You raised a due process claim. Under our case law, if the IJ turns you down for lack of corroborating evidence, you're supposed to be given some notice of that and an opportunity to respond. Where did you exhaust that before the agency? I'm not sure I can find that in the record. Your Honor, in Ren v. Holder, I want Ren's sense. The question is, my question, so you're making a Ren claim. I know the substance of your claim. My question is, you have to exhaust that before the agency. I can't find that in the record. Can you show me where in the record you exhausted that before the agency? Your Honor, that claim should not be exhausted before the agency, because it would have been futile to do so. Why? Because, as this court mentioned, in the case called Seehey v. Holder, lack of corroboration is only a subset of the overall credibility determination. Well, I understand that, but would Ren have come down head-on before the BIA's decision? Yes. So why didn't you say to the BIA, gee, we may not have met at the time the IJ held the hearing, we don't have anything to corroborate, but you never gave us a chance to corroborate, so you should relay it back to the IJ so that we have a chance to corroborate it. Besides, there were ways, though, in the agency. There were ways that, Your Honor, however, the agency had already denied his adverse credibility determination and had denied the case on adverse credibility on other grounds that did not have anything to do with lack of corroboration. Therefore, the agency, even if we had raised that issue before the agency, it would have been futile to begin with, because the agency could alternatively deny the case on the other grounds. So let me understand your argument. If we were to find that there was substantial evidence towards the agency, you could find a lack of credibility on the other grounds, then your lack of corroboration argument fails also, doesn't it? That's correct. Okay. That's what this court held in Seehey v. Holder, because lack of corroboration is a subset of the other claim. Now, coming back to the agency's adverse credibility determination, in this case, the agency failed to provide a specific inclusion reason for its decision. More specifically, the record shows and compels the conclusion that the board alleged inconsistencies either did not exist or trivial in the board, and the immigration judge failed to take into account the petitioner's reasonable explanations for those inconsistencies, and they were based on speculation and conjecture. The most significant inconsistency in this case related to the petitioner's decision to leave his country after he was abducted by the extremists in October of 2006. He testified that he was abducted, and after his abduction, he contacted an agent and facilitated his departure from Pakistan. The immigration judge found this to be inconsistent with the fact that a Coleman visa application had been submitted on his behalf by the consuming company in May of 2006, and also a letter, an offer letter. Now, under this court's case law, immigration judge could not ignore evidence in rejecting a plausible explanation for an inconsistency. I'm just interested in reading it correctly. What's the explanation for the shipping company application? I'm not sure I saw that your client did an explanation for whether it was an application by the shipping company in May. Your Honor, if you look at the legislative record, page 40, which is the letter from the shipping company, that letter specifically states that it specifically requests at 340. Yes, Your Honor. It's page 240, excuse me. That letter specifically requests... Your Honor, I'm so sorry. I misspoke. It's page 40. I misspoke. That letter specifically requests the embassy to issue a multiple-entry visa in order to avoid any problems when our ships arrive to the U.S. ports. This letter says that the petition would be implied by the shipping company once there was... No, I know what the letter says, and I'm sorry, maybe I didn't answer the question as precisely as I might. What was his explanation of this, Mr. Collins? Mr. Collins' explanation was that he was a seaman. He had been working as a seaman before, and if his application had been filed by the shipping company for making work before, in case there was a job available in the future, that was his explanation. And that's why he needed an agent after he was kidnapped by the extremists in October of 2006 to leave the country. Having a visa, a Cuban visa, did not allow him to leave the country. He couldn't board his ship. The shipping company says, yes, we submit over to visa application just in case you might need somebody. Your Honor, this letter says exactly that. And he hieroglyphs all over the States. It says that for your kind information, all crew members have been employed by our principal in various facets. No, but it says you are requested an additional police in order to avoid any problems. When a ship arrives at the U.S. port, I imply that this person is going to be on that ship as a crew member. Once the ship arrives, but that is besides the point, Your Honor, because the prisoner needed to leave the country. That's why he needed it. That's why he needed it. He told the shipping company, I'd like you to get me a visa, even though I'm not going to go until November. No, that's not what he said, Your Honor. So what did he say? The petitioner explained to the immigration judge that he was a seaman and he had worked for a shipping company before. Well, you know, the ultimate, I think, conflict, I think, is the differences on which the I.J. relied is this letter. Indeed, the fourth clause is, does he get, according to the petitioner's testimony, he did, the foreman did, to leave the country until November. That's correct. So, you know, why would he make these arrangements? You know, he never explains it adequately. Your Honor, he did explain. This is an administrative record, 321, 323, and 324. He explained that he was a crewman. He worked on the ships, and he had worked on the ships in the past. Those jobs were lucrative jobs, and it didn't have anything to do with his decision to leave the country. Now, this is the fundamental problem here, Your Honor. Immigration judges are administrative law judges. They are not article III judges. They must make the record, build the record, and if the immigration judge's decision is not clear, the court cannot meaningfully review it because it cannot search the record to justify a decision by the immigration judge. That's the problem in this case. The immigration judge did not make a clear finding in this case. The decision is not well written. It's poorly written. It's hard to follow, and that's the point now. In addition to this big inconsistency or significant inconsistencies, as the court called it, all the other inconsistencies, the alleged inconsistencies relating to his medical treatment, relating to whether he was abducted on the second day as opposed to the third day, whether he had sufficient knowledge of his party's political involvement in the 2002 elections, all mischaracterized testimonies, all conjectures, all speculations. And yes, the REAL-ID Act provides immigration judges with substantial deference, but it doesn't give immigration judges a blank check to make whatever findings they can or to ignore evidence in the record and to selectively look at evidence in finding someone not credible. I think that this is a classic example of a decision which is poorly written and, therefore, disposition for review should be granted because the record does not establish that the immigration judge's private decision has sufficient and quotient reason for our decision. Thank you. Thank you. Well, we'll hear from the government. Ms. Bergalisi, did I do it right? Yes. Good morning, Your Honors. Good morning. My name is Sarah Bergalisi, and I represent the Attorney General of the United States. Your Honors, as this court has indicated in their questions to the petitioner, the key factor in this case is that it's a visa application. Of course, the Travis petitioner for review has substantial evidence across the immigration judge's decision, but the alien fails to provide an adequate explanation for key inconsistencies within his testimony, and the doctor is pregnant. Well, you can't do that. I take it the government agrees that we have jurisdiction over the petition for review even when it came from the IJ does? Yes, absolutely, Your Honor. The procedure is a little different than we usually see, but we agree that it would have been futile for the alien once his cat application was withdrawn, so I've appealed that decision to the court. And before you get adverse credibility again, can you address the Wren issue? Absolutely, Your Honor. The Wren issue is a non-issue in this case because under Wren, there is a two-step process for addressing a corroboration factor and adverse credibility due to discrimination. This court elucidated and clarified that two-step process in Petare language, and that is... I'm sorry I didn't provide a citation. I was just prepared to discuss it if it came back. That is 835, F3rd, 1037. That's from August of last year. The two-step process is that, first, the court addresses the non-corroboration grounds of an adverse credibility determination. As the court finds that those grounds are unsupported by the record, only then do they reach the question of the corroboration finding. And as we have indicated in our brief, as we prepare tonight and today, the adverse credibility factors in this case are supported by substantial evidence, so the court need not address the second factor of Wren. And if we were to get a second factor of Wren, is it inexhaustible? It is not, Your Honor. And the alien had an opportunity to present that argument before the court. Okay, I'm sorry. I didn't mean to distract you from the adverse credibility thing, but those were preliminary issues I was interested in. Sure. Thank you for bringing that up, Your Honor. To it. I'm such a curious bit. Back to my argument. I would like to stress, Your Honor, as the petitioner also stressed, that the most salient inconsistency in this case is regarding the visa application and the timing of the visa application, whether it is tied to the alien's intent to leave the country or not. The alien, at bottom, failed to provide a clear explanation of the sequence of events with respect to his visa applications. All reasonable guides could differ about what his intent was, whether there were parallel tracks in applying lawfully for a visa, and then who intended to leave the country quickly and preferring fraudulent documents. It's not clear in the record if it was the alien's burden to make the record clear. So Mr. Ahmed says, I think he makes two arguments. One is that it's not substantial evidence. It's important to have personal inevitability finding. But he says, one reason I'm making that argument is because the IG didn't clearly display his decision. Would you respond to that? Absolutely, Your Honor. The immigration judge did provide clear and cogent reasons to support her adverse credibility determination in this case. The immigration judge's decision is a moral decision, so it may not read as clearly as a written decision in that it might not have subject headings or clear paragraphs. But the immigration judge did clearly in her decision delineate multiple inconsistencies that she found supported her adverse credibility decision. Namely, she found there were inconsistencies with regard to the visa application and timing of the petitioner's choice to leave the country. She also found that there are material inconsistencies in his account of the abduction by the Missoula religious group in that he said in parts of his documents that he presented to the court that he was abducted the day after he received threats by the group at the store and then later testified the day he came to his home two days after. And he failed to explain again the inconsistencies each time. But that bottom one is most important. It says every time an inconsistency was brought to the petitioner's attention during testimony, he failed to adequately explain the inconsistencies. And the immigration judge is under no obligation to take any explanation as positive. They're allowed to consider the explanations and have to advise. What made the one-day difference as a trigger? Your Honor, we would say that it is not trivial because, again, it relates to the exact sequence of events that occurred in this petitioner's life, which he presumably had direct knowledge of and had recounted. It's a material indiscrepancy because it is the time between a threat and an abduction, so it can be distinguished from red where the indiscrepancy was about the alien's loss of consciousness during the period of detention. And this detail is detailed in the alien's second declaration, which is that the abduction happened early in the morning, the very next day, but then during testimony said that it happened in two days. And additionally, what is more important, is that when he was presented with this inconsistency by his attorney, who almost prompted him to say that the attorney made the mistake in the declaration of the alien, didn't provide an explanation. He just said, no, I'm saying that it happened two days later. Right, well, the lack of corroboration issue and including the petitioner's position that, well, the lack of corroboration is just a subset of credibility findings that you can see results in. It's something they can't do until they have evidence. Right. I would agree that a lack of corroboration can be a subset of an adverse credibility determination. Because of the lack of the opportunity to rebut it. Exactly, yes. And I would argue that in that respect, the immigration judge's findings regarding the documents that the alien presented, both the insufficiency and unreliability problems in the letter from Jamil and his inability to provide evidence of historical ownership undermined his credibility as the requirement that he was supposed to be provided an opportunity to either provide that information or say why it was. What you're saying is an IJ can say, I don't find this very credible because there's no corroboration. The immigrant or the alien must be given the opportunity at that point. It only has to be an immigrant's testimony. Otherwise, it's not credible. Right, but the request for the opportunity to rebut has to be made somewhere in the agency proceedings or the written argument comes through. Exactly, Your Honor. And it's a procedural problem that the agency is able to fix. And therefore, it's a procedural to process claims that should be raised at the agency first. I don't think your opponent disagrees with that. No, I don't think he does either. What is important with respect to the documents is that the immigration judge found that they are insufficient to bolster already incredible testimony. And that's important. That finding is also supported by substantial evidence in the record. If Your Honor has no further questions, I will call this hearing adjourned. We do not, and we say counsel, oppose further arguments in the case that we submit. Thank you.
judges: Tashima, Hurwitz, Adelman